UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
STEPHANIE L. STEIGERWALD,       :    CASE NO. 1:17-CV-1516
                                                :
         Plaintiff,                        :
                                                :
v.                                           :    OPINION & ORDER
                                                :    [Resolving Doc. No. 18]
COMMISSIONER OF SOCIAL    :
SECURITY,                               :
                                                :
         Defendant.                     :
                                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Stephanie Steigerwald brings this class action complaint against Defendant Nancy Berryhill, Acting Commissioner of the Social Security Agency ("Commissioner").[1] Plaintiff Steigerwald alleges that Defendant Commissioner has repeatedly failed to properly calculate and disburse Social Security benefits when a claimant's representative receives attorneys' fees.

Defendant Commissioner moves to dismiss Plaintiff's complaint, saying this Court lacks subject matter jurisdiction.[2] Defendant Commissioner argues that Plaintiff Steigerwald failed to present and exhaust her claim before the Social Security Agency ("SSA"), as required by statute, and that Plaintiff Steigerwald's claim is moot.

For the following reasons, the Court **DENIES** Defendant Commissioner's motion to dismiss.

---

[1] *See generally* Doc. 1.
[2] Doc. 18. Plaintiff Steigerwald opposes. Doc. 25. Defendant Commissioner replies. Doc. 30.

Case No. 1:17-cv-1516
Gwin, J.

## I. Background

**A. The Windfall Offset Calculation**

Defendant Commissioner has previously found Plaintiff Steigerwald entitled to both retroactive disability benefits under Title II of the Social Security Act and retroactive supplemental security income ("SSI") under Title XVI of that Act.[3] Neither party contests these benefit awards.

Eligibility for SSI benefits and the amount of those benefits are both affected by an individual's income, including income from Title II disability benefits.[4] For this reason, when a claimant qualifies for both retroactive Title II and SSI benefits, SSA performs a calculation to ensure that the claimant is not paid a greater amount than they would have received if the claimant's benefits were paid when originally owed.[5] This is known as a windfall offset calculation.[6]

When a claimant hires an attorney or other representative to aid them in obtaining Title II disability benefits, the claimant can pay the representative from her awarded Title II benefits.[7] When this happens, SSA deducts the attorney representative payment amount from the claimant's income calculation for SSI purposes.[8]

Because a representative's fee may not be finalized until after a claimant is awarded retroactive benefits, SSA may need to calculate the windfall offset twice: once when a claimant is initially paid retroactive benefits, and again after the claimant's representative's fee is finalized.[9]

---

[3] Doc. 1 at 15-16.
[4] *See* 42 U.S.C. § 1320a-6.
[5] *Id.*
[6] *See, e.g.*, Social Security Agency Program Operations Manual System (hereinafter "POMS") SI 02006.202(B)(5).
[7] *See, e.g.*, POMS SI 02006.202(A).
[8] *See* 20 C.F.R. § 416.1123(b)(3).
[9] POMS SI 02006.202(B).

Case No. 1:17-cv-1516
Gwin, J.

After the representative's fee is finalized, a second windfall offset calculation can result in SSA paying the claimant additional benefits.[10] Additional benefits result because the claimant's income is lower after SSA deducts representative fees from their income and the Social Security Act's means-testing scheme increases SSI benefits when income decreases. In effect, the SSA payment of the attorneys' fees decreases the Title II disability benefits and the resulting decreased Title II disability benefits qualifies the participant for increased SSI benefits.

Plaintiff Steigerwald alleges that in a large number of cases, including her own, SSA has failed to perform a second windfall offset calculation after the final representative's fee is determined.[11] Because of this failure, Plaintiff Steigerwald alleges that Defendant Commissioner has wrongfully withheld retroactive Title II benefits potentially totaling millions of dollars.[12]

**B. The Windfall Offset Calculations as Applied to Plaintiff Steigerwald**

Because the process leading to the necessity of a windfall offset recalculation can be confusing when spoken of in the abstract, Plaintiff Steigerwald's account gives a useful example.

Plaintiff Steigerwald hired her attorneys in September 2009, and agreed to pay her attorneys 25 percent of the benefits they recovered for her.[13] In July 2014, her attorneys successfully recovered approximately five years of back SSI and Title II disability payments.[14]

At that time, SSA correctly calculated the amount of past-due SSI and Title II benefits owed to Steigerwald. SSA then paid all past-due SSI benefits to Plaintiff Steigerwald, and withheld all past-due Title II benefits in order to make the first windfall offset calculation and to

---

[10] *See, e.g.*, Doc. 18-1 at 18 (noting that a windfall offset recalculation showed that Plaintiff Steigerwald was entitled to $5,392.08 in underpaid benefits).
[11] Doc. 1 at 11-15.
[12] *Id.* at 14 (noting that a 2016 Office of Inspector General Report estimated that over 13,000 beneficiaries did not have windfall offset calculations processed and over $70 million was unpaid as a result).
[13] *See* Doc. 18-2 at 66.
[14] *Id.* at 15-16.

Case No. 1:17-cv-1516
Gwin, J.

account for approximately $17,000 in potential attorneys' fees that Steigerwald might have to pay.[15] In February 2015, SSA made the initial windfall offset calculation.[16]

Under her attorneys' agreement with Steigerwald, their successful representation entitled them to approximately $17,000, which is the amount they sought in a January 2015 petition.[17] SSA, however, reduced this amount and ultimately awarded $13,500 in fees to Steigerwald's attorneys in August 2016.[18]

In September 2016, SSA contacted Steigerwald's attorneys to ask whether Steigerwald's attorneys would petition the district court for the remainder of the fee that SSA had not awarded them. SSA also notified the attorneys that the agency was withholding approximately $3,500 (the difference between Steigerwald's attorneys' full fee and the amount SSA awarded them) from Steigerwald's benefits.[19] Steigerwald's attorneys responded within a few days, informing SSA that they would not petition for any additional fees, that their fee was therefore finalized, and that SSA should release the withheld funds to Plaintiff Steigerwald.[20]

At this point, SSA had to complete two actions in order to finish paying Steigerwald's past-due benefits. First, SSA needed to release the $3,500 it withheld for attorneys' fees. SSA did this in February 2017.[21]

Second, SSA needed to perform another windfall offset calculation after reducing Steigerwald's qualifying income to account for the $13,500 attorneys' fees that she had paid.[22] As

---

[15] *See* Doc. 18-2 at 2.
[16] *Id.*
[17] Doc. 1 at 15-16.
[18] *See* Doc. 18-2 at 4.
[19] *Id.*
[20] *See* Doc. 25-1 at 4 (responding to SSA's September 12, 2016 inquiry on September 15, 2016).
[21] Doc. 18-2 at 4.
[22] Mathematically envisioned, the calculation of Steigerwald's benefits looks like this:
   **Total Benefits Possible (~68k (estimated))**
   **– Attorneys' Fees Petitioned For (~17k)**
   **– Windfall Offset Calculation One (~10k (estimated))**

-4-

Case No. 1:17-cv-1516
Gwin, J.

of the filing of this suit, SSA had not performed the second windfall offset calculation. Had it done so, Steigerwald would have been entitled to an additional $5,392.08 in past-due benefits.[23]

## II. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(1) may either make a facial jurisdictional attack or it can attack the factual basis of jurisdiction.[24] When a defendant challenges subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing that the Court has subject matter jurisdiction over his claim.[25] "Aside from the resolution of jurisdictional prerequisites, a district court must generally confine its Rule 12(b)(1) or 12(b)(6) ruling to matters contained within the pleadings and accept all well-pleaded allegations as true."[26]

## III. Analysis

Defendant Commissioner argues that this Court lacks jurisdiction to hear Plaintiff Steigerwald's claims because (1) Steigerwald did not first present her claims to the SSA; (2) even if Steigerwald had first presented her claims, she did not exhaust those claims; and (3) Steigerwald's claims are now moot. Defendant Commissioner also argues that this Court lacks mandamus jurisdiction because Steigerwald has an alternate adequate remedy through § 405(g).

The Court addresses each of these arguments in turn.

---

    **+ Difference between Petitioned For and Actual Attorneys' Fees (~3.5k)**
    **+ Windfall Offset Calculation Two (~5.4k)**
    **= Total Owed (~50k (estimated))**
SSA's alleged failure to calculate and pay "Windfall Offset Calculation Two" is the cause of this suit. Amounts marked "(estimated)" were not provided by the parties and are used solely for illustrative purposes.

[23] In November 2017, during the pendency of this suit, SSA performed the windfall offset recalculation and paid Steigerwald $5,392.08 in past-due benefits as a result. Doc. 18-2 at 5.
[24] *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).
[25] *Hedgepeth v. Tennessee*, 215 F.3d 608, 611 (6th Cir. 2000).
[26] *Allred v. United States*, 689 F. App'x 392, 394 (6th Cir. 2017) (quoting *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 481 (6th Cir. 2009)).

-5-

Case No. 1:17-cv-1516
Gwin, J.

**A. Presentment**

Defendant Commissioner argues that this Court lacks subject matter jurisdiction over Plaintiff Steigerwald's claims because she did not sufficiently bring those claims to SSA before filing her complaint, in violation of 42 U.S.C. § 405(g)'s non-waivable presentment requirement.[27] The Court finds, however, that Plaintiff Steigerwald did present her claims to SSA.

Section 405(g)'s presentment prong requires that all claimants bring their claims to the attention of SSA before filing suit in federal court.[28] This requirement is intended to "channel" legal attacks through SSA and "assure[] the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts . . . ."[29]

Plaintiff Steigerwald argues that she or her attorneys satisfied § 405(g)'s presentment requirement three times: first, by originally filing her application for benefits; second, by her attorneys' petitioning for attorneys' fees; and third, by responding with a letter that told SSA that Steigerwald's attorneys' fees were final and arguing for SSA to "release the withheld benefits to the claimant."

The Court need not decide whether Steigerwald presented her current claims simply by filing for benefits or when her attorneys made their request for fees. Steigerwald's attorneys' subsequent letter to SSA regarding benefits withheld because of attorneys' fees satisfies the presentment requirement.

---

[27] *See Heckler v. Ringer*, 466 U.S. 602, 617 (1984) ("We have previously explained that the exhaustion requirement of § 405(g) consists of a nonwaivable requirement that a claim for benefits shall have been presented to the secretary . . . and a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant." (citations and internal quotation marks omitted)).
[28] *See* 42 U.S.C. § 405(g) (allowing judicial review only "after [a] final decision of the Commissioner of Social Security").
[29] *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 12 (2000).

Case No. 1:17-cv-1516
Gwin, J.

That letter, sent on September 15, 2016, responded to SSA's September 12, 2016 notice that SSA was still withholding funds from Plaintiff Steigerwald's benefits because of her attorneys' pending request for fees.[30] Plaintiff Steigerwald's attorney, Kirk Roose, faxed his response to SSA, stating:

> We were notified that additional money is being withheld for our fee in a Social Security Notice dated September 12, 2016.
> We are writing to inform you that we are not petitioning the United States District Court . . . for the balance of our fee. Please release the withheld benefits to the claimant.[31]

This letter informed Defendant Commissioner that the attorneys' fees in Plaintiff Steigerwald's case were final and told SSA to release whatever benefits SSA had withheld because of these outstanding fees. SSA's own operations manual states that once an attorney's fee is authorized by SSA or the district court in a case where both Title II and SSI claims are involved, SSA should send a copy of the notice authorizing the fee to the relevant SSA field office. That field office should then perform the necessary windfall offset benefits recalculation.[32]

Therefore, SSA knew Plaintiff Steigerwald had demanded SSA perform a second, updated windfall offset calculation, and SSA had all of the information it needed to perform this calculation. Presentment does not require more than this.[33]

The Court finds that by making SSA aware that the attorneys' fees issue was final and that SSA should release her withheld benefits, Plaintiff Steigerwald presented her claim.

---

[30] Doc. 25-1 at 2.
[31] *Id.* at 4.
[32] POMS SI 02006.202(B)(1).
[33] *See Alexander v. Price*, 2017 WL 3228119, at *3 (D. Conn. July 31, 2017) ("'The jurisdictional presentment requirement is easily satisfied, and requires only that a claimant made a formal or informal request for benefits.'" (quoting *Mai v. Colvin*, 2015 WL 8484435, at *2 (E.D.N.Y. 2015)).

Case No. 1:17-cv-1516
Gwin, J.

**B. Exhaustion**

In addition to its non-waivable presentment requirement, § 405(g) also contains a waivable requirement that a claimant exhaust her administrative remedies prior to filing an action in federal court. Defendant Commissioner can voluntarily waive this administrative exhaustion requirement, or in certain circumstances, the Court may require Defendant Commissioner to waive this requirement.[34]

Plaintiff Steigerwald does not contend that she has exhausted her available administrative remedies. Instead, she argues that this requirement should be waived because exhaustion in this instance would be futile. She argues that neither she nor any class member received a notice of entitlement to retroactive payment of underpaid benefits. Without the knowledge that SSA had failed to perform a second windfall offset calculation and did not intend to do so, Plaintiff Steigerwald says there was no decision to appeal and no remedy to exhaust. Plaintiff Steigerwald also argues that exhaustion should be waived because her claim is collateral to her claim for benefits and she will suffer irreparable harm without waiver.

The Court finds each of these arguments persuasive. In *Bowen v. City of New York*, the Supreme Court identified three relevant factors for deciding whether a court should waive an exhaustion requirement: "(1) are the claims at issue collateral to the underlying decisions as to eligibility for entitlements; (2) would claimants be irreparably harmed were the exhaustion requirement enforced against them; and (3) would exhaustion of administrative remedies be futile."[35]

All three of these factors weigh in favor of requiring waiver here. First, SSA has already determined that Plaintiff Steigerwald and the proposed class are entitled to both Title II and SSI

---

[34] *See Day v. Shalala*, 23 F.3d 1052, 1059-60 (6th Cir. 1994).
[35] *Day,* 23 F.3d at 1059 (citing *Bowen v. City of New York*, 456 U.S. 467, 482-86 (1986)).

benefits. Indeed, Defendant Commissioner now admits that it owed Steigerwald additional benefits after a windfall offset recalculation.[36] Steigerwald's current claim is, at its core, simply an attempt to force SSA to finish calculating the amount of the benefits that SSA admits it owes her.[37]

Second, Plaintiff Steigerwald makes a clear case for potential irreparable harm. Title II and SSI benefits are designed to ensure that recipients who live with both poverty and disability receive enough income to purchase basic life necessities. Prolonged denial of these benefits results in an inability to purchase these necessities,

> and causes anxiety and distress which can aggravate existing conditions. The Supreme Court has instructed [the courts] to "be especially sensitive to this kind of harm where the Government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the procedure they should have received in the first place."[38]

Where, as here, a plaintiff has presented evidence that these vital benefits may languish in administrative purgatory for years, clear danger of irreparable harm exists.[39]

Finally, Plaintiff Steigerwald has presented evidence that requiring administrative exhaustion would be futile. Defendant Commissioner accurately notes that when an attorneys' fee authorization occurs, SSA sends the claimant a notice that explains the windfall offset recalculation and states, "[i]f a claimant thinks more SSI benefits are due, and has not received more money or a letter within 90 days of this authorization notice, he or she should contact SSA."[40]

---

[36] SSA performed the windfall offset recalculation after Steigerwald filed her complaint and has since paid her $5,392.08 in retroactive benefits. Doc. 18-1 at 25.
[37] *Cf. Day*, 23 F.3d at 1059 ("Plaintiffs do not seek to be found eligible for benefits in this action, *but rather challenge the procedure* by which eligibility determinations were made by the [SSA]." (emphasis added)).
[38] *Id.* (quoting *City of New York*, 456 U.S. at 484).
[39] *See* Doc. 1-6 at 11 (noting that in a case similar to this one, SSA had not paid benefits owed after an incorrect windfall offset calculation over four years after those benefits were payable).
[40] Doc. 18-2 at 101.

Ordinarily, this would suggest that there is an adequate administrative remedy for pursuing a windfall offset recalculation-based underpayment. However, Plaintiff Steigerwald's attorneys contacted SSA within 90 days of when their fee was finalized and requested that SSA release the benefits withheld from Steigerwald.[41] Instead of performing the windfall offset recalculation and releasing withheld benefits at that time, SSA released some funds that it withheld in February 2017[42] and only performed the windfall offset recalculation after Plaintiff Steigerwald filed this class-action complaint.[43]

Defendant Commissioner makes much of the fact that SSA provided a February 2017 notice of additional benefits, which referenced Attorney Roose's September 2016 communication.[44] This notice stated that SSA would pay Steigerwald the remainder of her benefits withheld for attorneys' fees and apprised her of her appellate rights.[45] The amount of benefits that the notice says will be paid appears to be the amount still withheld from her benefits before the required, but not yet performed, windfall offset recalculation.[46]

Nothing about this notice, however, suggests to Steigerwald or her attorneys that SSA would not also perform a windfall offset recalculation, as its own operating procedures required it to do.[47] Therefore, this notice did not alert Plaintiff Steigerwald that it represented her only administrative opportunity to challenge SSA's failure to perform the second windfall offset calculation.

---

[41] *See* Doc. 25-1 at 4.
[42] *See* Doc. 18-2 at 4 (noting a February 6, 2017 payment of $3,559.25, which was "the remainder of the $17,059.25 SSA withheld to pay attorneys' fees").
[43] *Compare id.* at 5 (noting that SSA recalculated Plaintiff Steigerwald's windfall offset on November 6, 2017) *with* Doc. 1 (complaint filed July 18, 2017).
[44] *See* Doc. 18-2 at 132.
[45] *Id.* at 132-33.
[46] *See id.* at 130.
[47] *See* POMS SI 2006.202 (describing the process by which SSA performs the windfall offset recalculation once an attorney petitions for and is authorized to receive fees).

Case No. 1:17-cv-1516
Gwin, J.

Indeed, this problem flows throughout all of the notices given to Steigerwald about the calculation of her benefits. Throughout the numerous notices it provided to Steigerwald, SSA never informed Steigerwald that it had finalized *all* of her benefits calculations; each notice simply referred to the calculation of a discrete portion of her benefits.[48]

Without some type of final notice or a notice with explicit information about the windfall offset recalculation (or lack thereof), neither Steigerwald nor her attorneys received reason to believe that the windfall offset recalculation payment was not forthcoming. They were given no reason to challenge the absence of that recalculation. By attempting to "exhaust" this claim, Steigerwald would not be challenging one of Defendant Commissioner's decisions through an administrative review process, she would simply be requesting that SSA hurry up.

Ultimately, exhaustion in this instance is futile because there is no SSA action to challenge through the administrative review process. Instead, SSA has simply delayed performing, or failed to perform, part of its required review of a claimant's benefits and provided no notice to claimants that further review had ended.

For these reasons, the Court will require Defendant Commissioner to excuse § 405(g)'s exhaustion requirement.[49]

**C. Mootness**

Defendant Commissioner next argues that once SSA became aware of Plaintiff Steigerwald's complaint, it performed the second windfall offset calculation to correctly subtract

---

[48] *See, e.g.*, Doc. 18-2 at 99-101, 130 (referring to benefits withheld because of outstanding possible attorneys' fees); *id.* at 132 (same). SSA's POMS does have a specific notice regarding the windfall offset recalculation that it is supposed to send to eligible claimants who have approved attorneys' fees. *See* POMS SI 02006.205(B)(3). There is no record of Plaintiff Steigerwald receiving this notice.

[49] Because the Court finds that it has jurisdiction under § 405(g), the Court expresses no opinion on whether it might also have mandamus jurisdiction.

her attorneys' fees.[50] SSA then issued her a direct deposit for $5,392.08; the amount it calculated that SSA owed Steigerwald in past-due benefits.[51] Because SSA has now paid Plaintiff Steigerwald the benefits, Defendant Commissioner argues that her claims are moot.

"The Supreme Court has made clear that Article III requires that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed. . . . A case may therefore become moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"[52] As an initial matter, Plaintiff Steigerwald does not concede that SSA has fully compensated her for her claim.[53]

Regardless of whether SSA has fully compensated her however, because this is a putative class action, the "picking off" exception to the mootness doctrine applies.[54] That exception "prevent[s] defendants from strategically avoiding litigation by settling or buying off individual named plaintiffs in a way that 'would be contrary to sound judicial administration.'"[55]

In cases such as this, the Sixth Circuit looks to "the timing and method of relief" to determine whether the picking off exception applies.[56] When a defendant is aware of the possibility of a legal action before filing, but then attempts to moot a plaintiff's claim after the case is filed, but prior to class certification, the timing is suspect.[57] Similarly, the Sixth Circuit finds the method of relief suspect when a defendant moots a plaintiff's claim through "an ad hoc process" and not because of the operation of "an established, standard procedure."[58]

---

[50] *See* Doc. 18-2 at 4-5.
[51] *Id.*
[52] *Unan v. Lyon*, 853 F.3d 279, 284-85 (6th Cir. 2017) (citations and internal quotation marks omitted).
[53] *See* Doc. 25 at 20 n.12.
[54] Plaintiff Steigerwald also argues that the "inherently transitory" exception to the mootness doctrine applies here. Because the Court finds that the "picking off" exception applies, the Court does not address this argument.
[55] *Unan*, 853 F.3d at 285 (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)).
[56] *Id.* at 286; *Wilson v. Gordon*, 822 F.3d 934, 942-43 (6th Cir. 2016).
[57] *Unan*, 853 F.3d at 285-86.
[58] *Id.* at 286.

Case No. 1:17-cv-1516
Gwin, J.

Here, both the timing and method of relief are suspect. The Court finds that the picking off exception applies. Defendant Commissioner had the opportunity and ability to pay Plaintiff Steigerwald and the other potential class members the benefits allegedly owed to them any time after their attorneys' fees were finalized. Defendant Commissioner only paid Steigerwald, however, shortly before filing this motion to dismiss.[59] This timing is suspect because the payment occurred after Plaintiff Steigerwald filed her class action complaint, but before the Court had a reasonable opportunity (or, indeed, any opportunity) to rule on a motion for class certification.

Although Defendant Commissioner argues that the picking off exception applies only after a plaintiff files a class certification motion, the Court sees no reason to draw this distinction. If a defendant could simply "pick off" a named plaintiff any time prior to class certification briefing, that would allow "defendants to essentially opt-out of [Federal Rule of Civil Procedure] 23."[60] It would also create a perverse incentive for litigants to engage in the proverbial race to the finish line that would lead to ill-timed and underprepared class certification motions.[61] Indeed, if the Court adopted Defendant Commissioner's suggested rule, plaintiffs' rational reaction would be to attempt to file their class certification motions alongside their complaints, before they obtain all relevant class discovery.

The courts are generally not in the business of subverting the Federal Rules of Civil Procedure, promoting irrationality, and creating perverse incentive structures that unnecessarily lower the quality of attorneys' work product. Therefore, the Court will not adopt Defendant Commissioner's suggested interpretation of the "picking off" exception.

---

[59] *Compare* Doc. 18-1 at 18 (paying Plaintiff Steigerwald on November 7, 2017) *with id.* (filed November 30, 2017).
[60] *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 384, 386 (S.D. Ohio 2008).
[61] *Id.*

Case No. 1:17-cv-1516
Gwin, J.

The Sixth Circuit cases that Defendant Commissioner cites do not compel a different result. As Defendant Commissioner correctly identifies, in its recent "picking off" cases, the Sixth Circuit has "held that a class action was not moot even though the named plaintiffs had been tendered a Rule 68 offer of judgment *because a motion for class certification was then pending*."[62] These cases, however, do not turn on whether a plaintiff has filed a class certification motion. Instead, these cases prevent defendants' subversion of a potential class-wide remedy by strategically mooting individual claims. As the Sixth Circuit initially explained some 40 years ago and recently reiterated:

> [t]he claims of delay which the plaintiffs advance, however, epitomize the type of claim which continually evades review if it is declared moot merely because the defendants have voluntarily ceased the illegal practice complained of in the particular instance. Thus, the defendants may expedite processing for any plaintiffs named in a suit while continuing to allow long delays with respect to all other applicants. . . . [R]efusal to consider a class-wide remedy merely because individual class members no longer need relief would mean that no remedy could ever be provided for continuing abuses.[63]

Nothing about this rationale limits the picking off exception to the time before a plaintiff files a motion for class certification. Instead, the question the Court must answer is whether a plaintiff has pursued her class claims with reasonable diligence and whether "the defendant is on notice that the named plaintiff wishes to proceed as a class, and the concern that the defendant therefore might strategically seek to avoid that possibility exists."[64] The Court finds both requirements met here.

Finally, Defendant Commissioner makes no attempt to argue that SSA's review of Steigerwald's case and subsequent payment to her was part of any standard and established

---

[62] *Wilson*, 822 F.3d at 948 (citing *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625 (6th Cir. 2005)) (emphasis added).
[63] *Id.* (quoting *Blankenship v. Secretary of HEW*, 587 F.2d 329, 331-33 (6th Cir. 1978)).
[64] *Unan*, 853 F.3d at 285 (quoting *Wilson*, 822 F.3d at 947).

-14-

Case No. 1:17-cv-1516
Gwin, J.

procedure. This is not the case where SSA was simply working through a backlog of claims and Steigerwald just happened to be "next in line" for SSA to process. Indeed, Defendant Commissioner admits that the only reason SSA paid Plaintiff Steigerwald when it did was because Steigerwald filed this complaint.[65]

The Court finds that the "picking off" exception applies and so Plaintiff Steigerwald's claim is not moot.

### IV. Conclusion

For these reasons, the Court **DENIES** Defendant Commissioner's motion to dismiss.

IT IS SO ORDERED.

Dated: January 17, 2018          s/ *James S. Gwin*
                                                       JAMES S. GWIN
                                                        UNITED STATES DISTRICT JUDGE

---

[65] *See* Doc. 18-1 at 18.

-15-